IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IAN G.,[1]

       Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

       Defendant.

Civ. No. 3:17-cv-00270-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This court has jurisdiction under 42 U.S.C. § 405(g). On March 17, 2015, Plaintiff filed an application for SSI and DIB, alleging disability as of December 1, 2013. After a hearing, the administrative law judge ("ALJ") determined that Plaintiff was not disabled under the Social Security Act from December 1, 2013 through September 7, 2016. Tr. 27.[1] Plaintiff argues the ALJ erred in giving little weight to the opinion of a treating psychologist. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> He can understand and remember simple instructions: he has sufficient concentration, persistence or pace to complete simple, routine tasks for a normal workday and workweek with normal breaks; he should have only occasional brief superficial interactions with the general public and coworkers; and he is able to accept supervision.

Tr. 22.

In formulating Plaintiff's RFC, the ALJ gave little weight to the opinion of Dr. Carl Lloyd, Ph.D., Plaintiff's treating psychologist. Plaintiff argues the ALJ erred in discounting Dr. Lloy'd opinion.

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When a treating physician's opinion is contradicted by another medical opinion, the ALJ may reject the opinion of a treating physician only by providing "specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Dr. Lloyd treated Plaintiff from April through July 2014, and again from December 2014 through May 2015. On March 27, 2015, Dr. Lloyd completed a Mental Impairment Questionnaire, Tr. 746-47, and a Mental RFC Assessment, Tr. 750-750-52. Dr. Lloyd opined Plaintiff had extreme limitations regarding maintaining social functioning and in maintaining concentration, persistence or pace. Tr. 746. Dr. Lloyd commented, "I doubt that any

3 – OPINION AND ORDER

accommodation or set of accommodations would permit Ian to <u>ever</u> <u>work</u> <u>in</u> setting which required <u>ATTN</u>, <u>social interactions</u> etc." Tr. 746 (emphasis in original). Dr. Lloyd concluded Plaintiff's attention and concentration would be impaired approximately 95% of the time to such a degree that Plaintiff could not be expected to perform even simple work tasks. Tr. 747 (even "simple tasks would prove unbearable for [Plaintiff].").

As relevant here, Dr. Lloyd concluded Plaintiff would have severe limitations[2] with: ability to maintain attention and concentration for at least two straight hours with at least four such sessions in a workday; ability to work in coordination with or proximity to others without being distracted, ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a constant pace without unreasonable number and length of rests; ability to interact appropriately with the general public or customers; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 751. Notably, Dr. Lloyd opined that Plaintiff's "conditions have existed to this degree of severity since at least childhood." Tr. 752.

In assigning little weight to Dr. Lloyd's opinion, the ALJ stated:

> [Dr. Lloyd's] described limitations are inconsistent with the results of psychological testing done by Dr. Scharf and inconsistent with the claimant's ability to care for his disabled child. The opinion is also inconsistent with the claimant's demonstrated abilities during the CDIU interview and other information uncovered by the CDIU investigation, particularly the witness statement concerning his successful prior employment. Dr. Lloyd's assessment appears to also be based on the claimant's condition when not on medication, rather than when compliant with medications.

Tr. 25-26.

---

[2] The form defined severe: "Indicates that the activity is totally precluded on a sustained basis and would result in failing even after short duration; e.g., 5-15 minutes." Tr. 750.

4 – OPINION AND ORDER

On June 2, 2016, a Special Agent[3] of the Cooperative Disability Investigations Unit conducted an investigation of Plaintiff. Tr. 845-54. Before Plaintiff realized he was being watched, the agent observed Plaintiff "in the busy main foyer of the VA Hospital, not seemingly affected by numerous patients and employees." Tr. 850. Plaintiff greeted or acknowledged several people in the lobby. Tr. 850. The investigator contacted Plaintiff and conducted a 36 minute pretext interview. The agent summarized the interview:

> During the interview, [Plaintiff] was calm, attentive and oriented to his surroundings (to person, place and time). He did not appear to have any issues in dealing with a stranger, even an authority figure (plainclothes officer/special agent), under the particular pretext contact. [Plaintiff] provided SA Anderson with appropriate responses to all questions directed to him and did not digress or become tangential. He expressed himself adequately, displaying good English and a fair vocabulary fund. [Plaintiff] was a fair historian concerning dates of employment, previous positions held, addresses and recalling situation and events that occurred in his past.
>
> [Plaintiff] smiled on occasion and was found to be affable and social. He never displayed overt signs of anxiety or depression, nor did he appear to be delusional or responding to internal stimuli (visual or audio hallucinations). [Plaintiff] expressed his thoughts in an orderly fashion and asked pertinent questions regarding the topic being discussed. His concentration and focus appeared intact, his thought process was linear, logical, and goal directed. [Plaintiff] did not present as being fearful of strangers (observed in crowded foyer and comfortable with the investigator) or being uncomfortable because he was out of his environment. [Plaintiff] at no time became distracted or confused, but he stayed on point, remaining cooperative and rational throughout the contact. His overall demeanor was appropriate and pleasant.

Tr. 851.

While the agent's observations contrast with Dr. Lloyd's opinion that Plaintiff could not interact appropriately with the general public, maintain concentration, engage in socially appropriate behavior, or accept instructions from supervisors, this aspect of the CDIU report

---

[3] The investigator did not identify himself as one conducting a CDIU investigation. Instead, the investigator identified himself as a police officer. Tr. 850.

5 – OPINION AND ORDER

alone is not a specific and legitimate reason to assign little weight to Dr. Lloyd's opinion.[4] After all, the agent's pretext interview only lasted 36 minutes, and Dr. Lloyd's opinions concerned Plaintiff's ability to perform over a 40 hour work week.

The ALJ, however, also pointed to the sharp contrast between Dr. Lloyd's opinion and Plaintiff's previous work history. As noted above, Dr. Lloyd believed no amount of accommodations would permit Plaintiff to ever work in settings requiring Plaintiff to maintain attention or interact with others. Tr. 746. And Dr. Lloyd believed Plaintiff's severe limitations, exacerbated in a work setting, "have existed to this degree of severity since at least childhood." Tr. 752.

Plaintiff was in the army for eight months in 2011 – 2012. Plaintiff received an honorable discharge and left the army not due to any limitations, but because his unit was deploying and Plaintiff, as a single parent, did not have a plan in place to care for his young son. Plaintiff then worked for eight months as a security guard through September 2013. Plaintiff left that job not because he was unable to perform the job duties, but because he moved to Oregon to be closer to his mother. Plaintiff's claims that his symptoms forced him to miss one work day each week during his employment as a security guard are contradicted by the CDIU report. The CDIU investigator contacted a witness regarding Plaintiff's performance as a security guard. The witness reported:

> [The hotel Plaintiff worked at] was a very busy venue and [Plaintiff] was a good fit, as he got along well with employees of the Hilton and patrons of the hotel. The witness further stated that [Plaintiff] was on time, worked well independently and had few, if any, sick days. The witness stated that if the hotel (Hilton) had any issues with [Plaintiff] they would not have hesitated to call and have him replaced. The witness stated that [Plaintiff] was not terminated and had no issues,

---

[4] The report also contrasts with Plaintiff's own description of his limitations. As Plaintiff does not challenge the ALJ's determination that he was less-than fully credible as to the extent of his own limitations, I need not delve into the differences between Plaintiff's testimony and the agent's observations.

6 – OPINION AND ORDER

but resigned on his own accord. The source highly recommended [Plaintiff] and
would hire him back if he were to return to the area and was in need of work.

Tr. 852.

The investigator's report contrasts sharply with Dr. Lloyd's severe restrictions dating back to Plaintiff's childhood, and his opinion that no amount of accommodations would allow Plaintiff to work.[5]

Plaintiff argues that nothing in the record supports the ALJ's statement that "Dr. Lloyd's assessment appears to be based on the claimant's condition when not on medication, rather than when compliant with medication." Tr. 26. The ALJ's finding, however, is a reasonable interpretation of the record. On March 19, 2015, Dr. Lloyd provided an annual assessment of Plaintiff's treatment. Tr. 780-81. Dr. Lloyd completed this assessment only eight days before he completed the mental RFC assessment. Tr. 752. In the annual assessment, Dr. Lloyd reported that "Rx adjustments over past few months have made significant positive changes for Ian's [symptoms]." Tr. 780. Dr. Lloyd noted "Ian far more attentive, less tangentile, ↓ ruminating, ↑ passion for parenting and seeking a more independent future. Continues to struggle with mood changes but reports not as severe." Tr. 780. "He reports compliance with meds as Rx, which have helped much." Tr. 780. Although Plaintiff was resistant to the idea of medication for six to seven months, he now "sees the value of Rx." Tr. 781. The ALJ's conclusion that Dr. Lloyd's severe restrictions did not align with Plaintiff's abilities when benefited from medication is a reasonable interpretation of the record.

The ALJ's other reasons for discounting Dr. Lloyd's opinion are supported by the record. The ALJ noted Dr. Lloyd's severe limitations were inconsistent with Plaintiff's ability to care for

---

[5] The investigator noted that Plaintiff "claimed that he can drive, but has no money to purchase a car, pay for insurance or gas." Tr. 852. This is inconsistent with Plaintiff's allegation that he cannot drive because "It scrambles my head and exacerbates my symptoms." Tr. 289.

7 – OPINION AND ORDER

his son. Plaintiff has full custody of his disabled son. Although Plaintiff's son stays with his grandmother one or two nights per week, Plaintiff is his son's primary caregiver. Tr. 279.

The ALJ noted Dr. Lloyd's opinion contrasted with the results of psychological testing performed by Dr. Daniel L. Scharf, Ph.D. Tr. 25. Dr. Scharf performed a psychodiagnostic examination of Plaintiff on August 28, 2014. Dr. Scharf noted:

> Today, he was able to understand and remember instructions. The claimant was able to sustain concentration and attention and behaved as if he would have difficulties with persistence in his attention after 1 to 2 hours. His performance on a MSE memory was inconsistent with his performance on interview. He is able to engage in appropriate social interaction.

Tr. 548-49.

The ALJ provided several specific and legitimate reasons supported by substantial evidence in the record for assigning little weight to Dr. Lloyd's severe restrictions. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (ALJ must provide specific and legitimate reasons supported by substantial evidence in the record for rejecting treating opinion in favor of contradicting nontreating opinion). Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))). The ALJ's conclusion that the opinions of the agency consultants, who concluded Plaintiff had moderate limitations and is able to perform simple and routine tasks with normal breaks, is supported by the record and free of legal error. As discussed above, the RFC constructed by the ALJ is supported by the CDIU report, Plaintiff's past employment history, the agency psychologists, and the more moderate limitations found by Dr. Scharf.

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of June, 2018.


               _____/s/ Michael J. McShane_____
                    Michael McShane
                 United States District Judge